UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PERRY PAYNE, | |
| Plaintiff, | Case No. __2:20-cv-861__ |
| v. | |
| WEST ELIZABETH SANITARY AUTHORITY and WEST ELIZABETH BOROUGH, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

NOW COMES, Plaintiff, Perry Payne, by and through his attorney, Christi Wallace, Esq. of MKO Employment Law and files this Complaint alleging as follows:

### I. Nature of the Action

1.      Plaintiff brings this action for violations of the Pennsylvania Whistleblower Act, 43 P.S. § 1421 *et seq.*, Federal Water Pollution Control Act known as the Clean Water Act, 33 U.S.C. § 1251 *et seq.* and wrongful termination in violation of Pennsylvania public policy.

### II. Jurisdiction and Venue

2.      This action arises under the statute cited in the preceding paragraph. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331.

3.      Plaintiff is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

### III. Parties

4.    Plaintiff, Perry Payne, is an adult individual with a primary residence located at 321 First Street, PO Box 325, West Elizabeth, PA 15088.

5.    Defendant, West Elizabeth Sanitary Authority (WESA), is located at 125 Lower 1st Street Ext, West Elizabeth, PA 15088.

6.    Defendant, West Elizabeth Borough, is located at 800 4th St, West Elizabeth, PA 15088.

### IV. Facts

7.    Plaintiff began working for Defendant WESA in June 2013.

8.    To Plaintiff's knowledge and belief, Defendant West Elizabeth Borough, is the municipality that supervises, controls, oversees and/or manages the daily operations of WESA.

9.    In September 2019, WESA was in the process of trying to get a new plant online.

    a.  Around this time, the old plant was still online and it developed a processing issue.

    b.  Plaintiff did everything he could to address and correct this processing issue but it continued until about mid-January 2020.

10.    In the beginning of January 2020, Plaintiff was told by Engineer Larry Lennon, Sr ("Mr. Lennon") to take two of the big tanks offline and leave the three smaller tanks online to address the processing issue at the old plant.

    a.  Plaintiff immediately said no.

    b.  Plaintiff told Mr. Lennon that if the two big tanks were taken offline, when it rained, the three smaller tanks would immediately overflow and sewage sludge would dump into the Monongahela River.

    c. Mr. Lennon said, "it happens every day" referring to WESA allowing sewage sludge to be dumped into the Monongahela River.

    d. Plaintiff refused to follow Mr. Lennon's direction because in doing so he would be purposely dumping sewage sludge into the Monongahela River, which Plaintiff knew was illegal.

11. Scott Pearson ("Mr. Pearson") later approached Plaintiff and asked him to follow Mr. Lennon's suggestion.

    a. Plaintiff once again explained that in doing so he'd be purposely dumping sewage sludge into the Monongahela River, which was illegal.

12. Plaintiff told Mr. Lennon and Mr. Pearson that he was going to report WESA to the Allegheny County Health Department ("ACHD") because WESA was not only allowing sewage sludge to be dumped into the Monongahela River but they were also asking him to dump sewage sludge into the Monongahela River, both of which were illegal under various state and federal statutes.

13. Plaintiff contacted Ed Wadkins from the ACHD in January 2020.

14. On February 24, 2020, Plaintiff was fired.

    a. It is Plaintiff's belief that both Defendants were involved in the decision to terminate him.

### V. Causes of Action

### COUNT I
**Violation of PA Whistleblower Act against Defendants**
**43 P.S. § 1423**

15. All preceding paragraphs are incorporated by reference as if fully set forth herein.

3

16.     43 P.S. § 1423(a) states, "no employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste by a public body or an instance of waste by any other employer as defined in this act.

17.     Plaintiff is an "employee" under the PA Whistleblower Act. 43 P.S. § 1422.

18.     WESA is a "public body" under the PA Whistleblower Act. 43 P.S. § 1422.

19.     West Elizabeth Borough is a "public body" under the PA Whistleblower Act. 43 P.S. § 1422.

20.     A "good faith report" is defined as "a report of conduct defined in this act as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." 43 P.S. § 1422.

21.     "Wrongdoing" is defined as "a violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422.

22.     Plaintiff made a "good faith report" of "wrongdoing" in January 2020.

    a.     Defendants' conduct was in violation of the Federal Water Pollution Control Act/Clean Water Act, 33 U.S.C. § 1251 et seq., Solid Waste Disposal Act, 42 U.S.C. § 6901 et seq., Clean Streams Law, 35 P.S. § 691.1 et seq., and Pennsylvania Sewage Facilities Act, Act of Jan. 24, (1966) 1965, P.L. 1535, No. 537.

4

b. Plaintiff made a "good faith report" because he made a report of "wrongdoing" without any malice or consideration of personal benefit and had reasonable cause to believe Defendants were violating the law.

23. Plaintiff was retaliated against and fired on February 24, 2020, which is a direct violation of the PA Whistleblower Law.

24. Plaintiff suffered damages as a result of the Defendants' actions.

## COUNT II
**Wrongful Termination in Violation of Pennsylvania Public Policy against Defendants Clean Streams Law, P.L 1987, Act 394 of 1937, as amended, 35 P.S. § 691.1 *et seq.***

25. All preceding paragraphs are incorporated by reference as if fully set forth herein.

26. Pennsylvania Courts have applied the wrongful termination public policy exception to situations in which an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; and (3) discharges an employee when specifically prohibited from doing so by statute.

27. The second exception applies to the case at hand.

28. Plaintiff was instructed to institute a process that would result in sewage sludge being dumped into the Monongahela River.

29. Plaintiff was complying with his statutory duties under the Clean Streams Law when he refused to dump sewage sludge into the Monongahela River.

30. Under the Clean Streams Law, Plaintiff had an affirmative statutory duty to comply with the following provisions:

a. SECTION 201. PROHIBITION AGAINST DISCHARGE OF SEWAGE. No person or municipality shall place or permit to be placed, or discharge or permit to flow, or continue to discharge or permit to flow, into any of the

5

waters of the Commonwealth any sewage, except as hereinafter provided in this act.

b.  SECTION 202. SEWAGE DISCHARGES. No municipality or person shall discharge or permit the discharge of sewage in any manner, directly or indirectly, into the waters of this Commonwealth unless such discharge is authorized by the rules and regulations of the department or such person or municipality has first obtained a permit from the department.

c.  SECTION 401. PROHIBITION AGAINST OTHER POLLUTIONS. It shall be unlawful for any person or municipality to put or place into any of the waters of the Commonwealth, or allow or permit to be discharged from property owned or occupied by such person or municipality into any of the waters of the Commonwealth, any substance of any kind or character resulting in pollution as herein defined. Any such discharge is hereby declared to be a nuisance.

d.  SECTION 611. UNLAWFUL CONDUCT. It shall be unlawful to fail to comply with any rule or regulation of the department or to fail to comply with any order or permit or license of the department, to violate any of the provisions of this act or rules and regulations adopted hereunder, or any order or permit or license of the department, to cause air or water pollution, or to hinder, obstruct, prevent or interfere with the department or its personnel in the performance of any duty hereunder or to violate the provisions of 18 Pa.C.S. section 4903 (relating to false swearing) or 4904 (relating to unsworn falsification to authorities). Any person or municipality engaging in such conduct shall be subject to the provisions of sections 601, 602 and 605

31.  Plaintiff had an affirmative duty to comply with the Clean Streams Law to protect the citizens and waters of the Commonwealth of Pennsylvania.

32.  Plaintiff refused to dump sewage sludge into the Monongahela River and go against his statutory duty under the Clean Streams Law.

33.  As a result, he was fired.

6

34.     Defendants prevented Plaintiff from complying with his statutory duty when he was fired.

35.     Plaintiff was wrongfully terminated in violation of Pennsylvania public policy.

36.     Plaintiff suffered damages as a result of the Defendants' actions.

### COUNT III
**Wrongful Termination in Violation of Pennsylvania Public Policy against Defendants Clean Streams Law, P.L 1987, Act 394 of 1937, as amended, 35 P.S. § 691.1 *et seq.***

37.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

38.     Pennsylvania Courts have applied the wrongful termination public policy exception to situations in which an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; and (3) discharges an employee when specifically prohibited from doing so by statute.

39.     The first exception applies to the case at hand.

40.     Defendants were requiring not only Plaintiff, but also other employees, to commit a crime under the Clean Streams Law.

41.     The Clean Streams Law specifically states the following:

   a.   SECTION 602. PENALTIES. (a) Any person or municipality who violates any provision of this act, any rule or regulation of the department, any order of the department, or any condition of any permit issued pursuant to this act is guilty of a summary offense and, upon conviction, such person or municipality shall be subject to a fine of not less than one hundred dollars ($ 100) nor more than ten thousand dollars ($ 10,000) for each separate offense, and, in default of the payment of such fine, a person shall be imprisoned for a period of ninety days.

   (b) Any person or municipality who negligently violates any provision of this act, any rule or regulation of the department, any order of the department, or any condition of any permit issued pursuant to the act is guilty of a misdemeanor of the second degree and, upon conviction, shall be subject to a fine of not less than two thousand five hundred dollars ($ 2,500) nor more than twenty-five thousand dollars

7

($ 25,000) for each separate offense or to imprisonment for a period of not more than two years, or both.

(c) Any person or municipality who, after a conviction of a misdemeanor for any violation within two years as above provided, negligently violates any provision of this act, any rule or regulation of the department, any order of the department, or any condition of any permit issued pursuant to this act is guilty of a misdemeanor of the first degree and, upon conviction, shall be subject to a fine of not less than five thousand dollars ($ 5,000) nor more than fifty thousand dollars ($ 50,000) for each separate offense or to imprisonment for a period of not more than five years, or both.

42.    If Plaintiff were to dump sewage sludge into the Monongahela River as instructed, he would've been in violation of Section 201, 202, 401 of the Clean Streams Law.

43.    Section 611 states any person who violates any provision of the Clean Streams Law shall be subject to the penalties in Section 602.

44.    Section 602 states any person who violates the Clean Streams Law can be convicted of a Misdemeanor.

45.    Defendants were asking Plaintiff to commit a crime and be convicted of a Misdemeanor.

46.    When Plaintiff refused to commit a crime, he was immediately fired.

47.    Plaintiff was wrongfully terminated in violation of Pennsylvania public policy.

48.    Plaintiff suffered damages as a result of the Defendants' actions.

### COUNT IV
**Wrongful Termination in Violation of PA Public Policy against Defendants**
**Pennsylvania Sewage Facilities Act, Act of Jan. 24. (1966), P.L. 1535, No. 537**

49.    All preceding paragraphs are incorporated by reference as if fully set forth herein.

50.     Pennsylvania Courts have applied the wrongful termination public policy exception to situations in which an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; and (3) discharges an employee when specifically prohibited from doing so by statute.

51.     The second exception applies to the case at hand.

52.     Plaintiff was instructed to institute a process that would result in sewage sludge being dumped into the Monongahela River.

53.     Plaintiff was complying with his statutory duties under the Pennsylvania Sewage Facilities Act when he refused to dump sewage sludge into the Monongahela River.

54.     Plaintiff had an affirmative duty to comply with the Pennsylvania Sewage Facilities Act to protect the citizens and waters of the Commonwealth of Pennsylvania.

55.     Plaintiff refused to dump sewage sludge into the Monongahela River and go against his statutory duty under the Pennsylvania Sewage Facilities Act.

56.     As a result, he was fired.

57.     Defendants prevented Plaintiff from complying with his statutory duty when he was fired.

58.     Plaintiff was wrongfully terminated in violation of Pennsylvania public policy.

59.     Plaintiff suffered damages as a result of the Defendants' actions.

### <u>COUNT V</u>
**Wrongful Termination in Violation of PA Public Policy against Defendants
Pennsylvania Sewage Facilities Act, Act of Jan. 24. (1966), P.L. 1535, No. 537**

60.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

61.     Pennsylvania Courts have applied the wrongful termination public policy exception to situations in which an employer: (1) requires an employee to commit a crime; (2) prevents an employee from complying with a statutorily imposed duty; and (3) discharges an employee when specifically prohibited from doing so by statute.

62.     The first exception applies to the case at hand.

63.     Defendants were requiring not only Plaintiff, but also other employees, to commit a crime under the Pennsylvania Sewage Facilities Act.

64.     The Pennsylvania Sewage Facilities Act specifically states the following:

   a.   Section 13. Penalties.--Any person who shall violate any provision of this act or the rules, regulations or standards promulgated pursuant to this act or who is the owner of a property on which a condition exists which constitutes a nuisance under this act or who resists or interferes with any officer, agent or employe of a local agency or the department, in accordance with the provisions of this act, in the performance of his duties, shall be guilty of a summary offense. Upon conviction thereof, such person shall be sentenced to pay a fine of not less than five hundred dollars ($500) nor more than five thousand dollars ($5,000), plus costs, or to imprisonment not to exceed ninety days, or both.

65.     If Plaintiff were to dump sewage sludge into the Monongahela River as instructed, he would've been in violation of the Pennsylvania Sewage Facilities Act and could've been convicted of a Summary Offense.

66.     Defendants were asking Plaintiff to commit a crime and be convicted of a Summary Offense.

67.     When Plaintiff refused to commit a crime, he was immediately fired.

68.     Plaintiff was wrongfully terminated in violation of Pennsylvania public policy.

69.     Plaintiff suffered damages as a result of the Defendants' actions.

<u>**COUNT VI**</u>
**Violation of the Federal Water Pollution Control Act**
**(later amended in 1972 and known as)**
**the Clean Water Act**
**33 U.S.C. § 1251 *et seq.***

70.     All preceding paragraphs are incorporated by reference as if fully set forth herein.

71.     33 U.S.C. § 1367(a) of the Clean Water Act states:

   a.   Discrimination against persons filing, instituting, or testifying in proceedings under this chapter prohibited. No person shall fire, or in any other way discriminate against, or cause to be fired or discriminated against, any employee or any authorized representative of employees by reason of the fact that such employee or representative has filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter.

72.     Plaintiff made an internal complaint to both Mr. Lennon and Mr. Pearson that they were not only committing illegal acts by dumping sewage sludge into the Monongahela River, but also requiring him to commit illegal acts by telling him to dump sewage sludge into the Monongahela River, both of which were in violation of the Federal Water Pollution Act (later amended and known as) the Clean Water Act.

73.     Plaintiff also made a complaint to the ACHD that Defendants were not only committing illegal acts by dumping sewage sludge into the Monongahela River, but also requiring him to commit illegal acts by telling him to dump sewage sludge into the Monongahela River, both of which were in violation of the Federal Water Pollution Act (later amended and known as) the Clean Water Act.

74.     Shortly after Plaintiff made this complaint, he was fired which is in direct violation of the Federal Water Pollution Act (later amended and known as) the Clean Water Act.

11

75.    Plaintiff's job was never in jeopardy prior to making a complaint.

76.    Plaintiff suffered damages as a result of the Defendants' actions.


WHEREFORE, Plaintiff respectfully request that this Court enter judgment in her favor, and against each Defendant, and award all damages available at law and in equity, including: lost wages, front pay, liquidated damages, punitive damages, court costs, attorney fees, pre-judgment and continuing interest, and any other relief that the Court deems necessary and proper

Respectfully Submitted,


/s/ Christi Wallace

PA ID: 313721
**MKO EMPLOYMENT LAW**
2545 Railroad Street, Suite 100
Pittsburgh, PA 15222
Direct: (412) 301-2702
Fax: (412) 223-4613
c@mkolaw.com